**L. Mae PIPPIN, Plaintiff below, Appellant,**

v.

**RANCH HOUSE SOUTH, INC., Defendant below, Appellee.**

Supreme Court of Delaware.

Submitted June 25, 1976.

Decided Sept. 15, 1976.

F. Alton Tybout and Jeffrey S. Goddess, of Tybout & Redfearn, Wilmington, for plaintiff-appellant.

Mason E. Turner, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, for defendant-appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

DUFFY, Justice:

In this "slip and fall" case, a Superior Court jury returned a verdict for defendant. Plaintiff appeals, arguing that she was unfairly prejudiced by the admission of evidence as to the absence of other accidents or injuries on the same premises, and that the prejudice was compounded by an incorrect jury instruction. We conclude that there is merit to the appeal and that the judgment must be reversed.

## I.

On the day of the fall plaintiff, age 80, lunched with two friends at the Ranch House, a restaurant operated by defendant and located on Concord Pike. After lunch they left the building en route to an automobile parked in a facility serving the restaurant.

The accident occurred on a sidewalk which begins at an exit of the restaurant and continues for some 56 feet along the South wall of the building. There is one step down immediately at the outer door of the restaurant, the sidewalk then continues level for 14 feet where there is a break or single step down in the pavement; thereafter it continues level to the end.

Plaintiff passed through the door, then proceeded down the initial step and along the walk. She looked straight ahead but never saw the step or break in the sidewalk. She recalled falling after taking "some steps". A companion described the fall as one in which plaintiff was simply "walking out into thin air." There was no handrail at the step.

The Ranch House had been in operation for some 14 months prior to the accident. Aware that the restaurant would attract elderly persons, the managing owner had the riser and the top of the step painted yellow so it would be more conspicuous. At the time of the fall it appears that the paint had lost much of its luster.

At one time a handrail had been placed along the walk from the restaurant door to the step, but it had been knocked down by automobiles. There was no railing at the time of plaintiff's fall, but one was installed thereafter.

Plaintiff introduced expert testimony to the effect that a step in the middle of a sidewalk creates a visual hazard because it is not expected at such a location (that is, in contrast with a sidewalk which ends in a curve or a roadway where a user expects to step down). The expert testified that if a single step or break is necessary, a handrail should be installed both to assist users and to alert them to the step itself.

## II.

We consider, first, plaintiff's argument that prejudicial error was made when Francis Guilday, the managing owner of the Ranch House, was permitted to testify to his knowledge about prior falls at the location in question.*

---

\* On direct examination Mr. Guilday testified as follows:

"Q. Mr. Guilday, do you have any rough idea as to how many customers come in and out of your restaurant on a given day, on an average day?

A. It is not accurate. Roughly two thousand, I would say.

Q. You are open how many days a week?

A. Seven.

Q. You are open 365 days a year?

A. Closed Christmas and New Year's and Thanksgiving. Three days.

Q. So you are open 362 days a year. You believe that in a rough sense you average perhaps two thousand customers for each of those days?

A. Yes. Right.

Q. Do you have any estimate as to out of those 2,000 people per day what percentage would park their cars in the southerly parking area as opposed to the parking area that exists between the west side of the restaurant and the Concord Pike?

A. There is more parking on what you call the southern side.

Q. In the southerly area.

A. Much more, yes.

Q. What percentage of the traffic would you say does park in that area as opposed to up here?

A. When you say 'up here' now there is parking all around the whole restaurant, in the back, on the other side. In other words, all around it. But there is more parking on the southern side.

MR. GODDESS: Let me pose an objection as to relevance. I don't know where we are heading in terms of total customers per day, but that one person falls is sufficient to sustain a case of negligence. Where other people park is also not relevant. If he is about to say that 80 per cent of his customers don't even use the step, that is irrelevant in negligence cases, also.

MR. TURNER: I think where I am going, your Honor, is I want to show roughly what percentage of the people come in

The question at issue is the admissibility of evidence showing the *absence* of prior accidents or injuries at the place in question. There are no Delaware decisions determinative of that subject. In *Jewell v. Pennsylvania R. R.*, Del.Supr., 183 A.2d 193 (1962), this Court concluded that evidence of prior accidents at a railroad company was inadmissible to prove notice to the railroad of the dangerous nature of the crossing. But the Court said that

> "We do not intend to be understood, in holding proof of prior accidents in the case at bar inadmissible, as also holding that in actions for injuries *caused by a dangerous defect* in a physical structure, or object, that proof of prior injuries *by reason of the same defect* would be inadmissible. To the contrary, we think that such proof is properly admissible, but that is not the case at bar."

Subsequent decisions have held that like evidence is admissible to prove that injuries were caused by a dangerous or defective condition on the premises in issue, *Wilmington Housing Authority v. Williamson*, Del.Supr., 228 A.2d 782, 788 (1967), or to show that an owner had notice of a hazardous condition. *McMilin v. United States*, D.Del., 290 F.Supp. 351, 355 (1968). But we have not found a Delaware precedent on the issue here presented.

■ There is "considerable conflict and confusion, within as well as between the various jurisdictions" on the issue of "non-notice." *Annot.*, 31 A.L.R.2d 190 (1953). In our view such evidence is probative, and therefore admissible, provided a proper foundation is laid.

■ When, as here, a plaintiff alleges that a dangerous condition has existed over a period of time, a defendant should be permitted to offer evidence showing that the condition is not defective and/or that any defect has not existed for the time period alleged. And, as the Supreme Court of Minnesota said in *Nubbe v. Hardy Continental Hotel System of Minnesota*, 225 Minn. 496, 31 N.W.2d 332, 335 (1948).

this door of the restaurant as opposed to the door which is on the other side.

THE COURT: I think we are aware of where you are going. The objection goes to why.

MR. TURNER: The legal significance of that is that the jury is certainly entitled to consider the number of other persons before any fall who were able to safely navigate this particular entranceway, and the law is clear that they may consider such lack of any fall as the evidence will be adduced in considering whether or not the condition is dangerous.

THE COURT: If this were an isolated case that we are concerned about that might be one situation, you are saying, but if there are seven thousand or two thousand people a day going in there, that is another situation.

MR. TURNER: I think it is evidence that the jury may consider.

\* \* \* \* \*

THE COURT: Mr. Goddess' position, though, I presume, is that whether he had notice of a 'dangerous condition,' whether it be one or not, is conditioned knowledge he gains from its use, whether it poses a dangerous condition to any number of other people who use the same thing and whether

his thinking was conditioned by the continued use of 2,000 people a day who navigated it without difficulty. I think it is relevant in that regard and I will allow it.

BY MR. TURNER:

Q. I am going to rephrase the question because we are getting a little off the track. From your observation since you have operated the restaurant have you observed that more of your customers use the door that we have been talking about in this case that apparently was used by Miss Pippin, or the door on the front or west side of the building?

A. Most of the customers, regardless of where they park, use the door we are speaking of for some reason. They walk around. I don't know why. The ones that are parked away from it, that is.

Q. Prior to June 30, 1974, had anyone, any customer even fallen on any part of this sidewalk or in the vicinity of the step that we have been referring to?

MR. GODDESS: Your Honor, let me renew the objection, and I guess I ought to make it a continuing objection to that line of testimony rather than popping up.

THE COURT: Overruled.

A. Not to my knowledge."

"Evidence of the absence of prior accidents resulting from the same physical defect or inanimate cause, under substantially similar circumstances is admissible to prove that such defect or cause was not dangerous or likely to cause such accidents, and further to prove that the person responsible for the defective condition was not reasonably chargeable with knowledge of its dangerous character."

On the issue of whether or not the step constituted a dangerous condition *Hilleary v. Earle Restaurant,* D.D.C., 109 F.Supp. 829 (1952) and *Menard v. Cashman,* 93 N. H. 273, 41 A.2d 222 (1945) are in accord. As to the notice issue see *Wilk v. Georges,* 267 Or. 19, 514 P.2d 877 (1973); *Muscato v. St. Mary's Catholic Church,* 109 N.J.Super. 508, 264 A.2d 74 (1970); *Stein v. TransWorld Airlines, Inc.,* 25 A.D.2d 732, 268 N.Y.S.2d 752 (1966).

Rarely will a defendant be able to produce evidence that the place in question was under such continuing scrutiny that personal knowledge of its condition throughout the time period can be shown. But whether a defendant can do so is not controlling on whether a manager or other superintendent may be permitted to testify as to the absence of complaints. Given a proper foundation we conclude that such a person should be permitted to so testify.

■ As to the foundation, we hold that a party who wishes to offer evidence as to the absence of other accidents must show that, during the period in question, the physical circumstances prior to the accident were reasonably comparable to those in issue. Additionally, it must be shown that the person offering the testimony is one who would, in the ordinary course of events, have either personal knowledge of the condition or that he is the person to whom reports as to accidents would ordinarily be made.

■ Applying this standard to the present record, it is clear that defendant failed to lay a proper foundation for Mr. Guilday's testimony inasmuch as he failed to establish that the physical conditions, during the use to which he testified, were reasonably comparable to the circumstances when plaintiff fell. For this reason it was reversible error to admit the testimony as to the absence of prior accidents.

### III.

Plaintiff also argues that the Trial Court inaccurately summarized the testimony of Mr. Guilday concerning his knowledge of prior accidents and improperly commented on the weight to be accorded this testimony. There appears to be some merit to this contention but we need not decide the question because we have ruled that the evidence was improperly admitted.

Reversed.