WILMINGTON COUNTRY CLUB,
Defendant–Below, Appellant,

v.

Cynthia COWEE and Brian Cowee,
Plaintiffs–Below, Appellees.

No. 51, 1999.

Supreme Court of Delaware.

Submitted: Oct. 13, 1999.
Decided: Jan. 21, 2000.
Revised: March 14, 2000.
Rehearing Denied March 14, 2000.

Stephen P. Casarino (Argued), and Stacey L. Cummings (Argued), Casarino, Christman & Shalk, Wilmington, DE, for Appellant.

Robert Pasquale (Argued), and Stephani J. Ballard (Argued), Doroshow, Pasquale, Krawitz, Siegal & Bhaya, Wilmington, DE, for Appellees.

Before HOLLAND, HARTNETT and BERGER, Justices.

HARTNETT, Justice.

In this appeal and cross appeal, defendant, Wilmington Country Club, ("Country Club") challenges the verdict in two jury trials that arose out of a motor vehicle accident that occurred at the intersection of Country Club's private roadway and a

public highway. We hold that in the first trial the jury did not err in finding that, although plaintiff, Mrs. Cynthia Cowee, was contributorily negligent, her negligence was not the proximate cause of the accident and therefore the Superior Court was incorrect in ordering a new trial. We further hold that the Superior Court correctly found that the jury did not commit error in finding that defendant, Country Club was negligent in not warning Mrs. Cowee of the existence of the intersection of Delaware Route 52 and the Country Club's private roadway. We further find that the Superior Court erred in not computing interest from the date of the first jury trial verdict. We therefore **AFFIRM IN PART; REVERSE IN PART;** and **REMAND.**

## I. Facts and Procedural History

The accident occurred in New Castle County at the intersection of Delaware Route 52, the Kennett Pike, and the private roadway entrance of Country Club. As Mrs. Cowee exited the country club's roadway, a truck traveling northbound on Route 52 at approximately 50 miles per hour struck her automobile causing her to suffer severe personal injuries.

Mrs. Cowee, after completing work at a wedding reception, was leaving the country club on its private roadway and entered into the intersection of the roadway with Route 52. Mrs. Cowee could not remember the facts or circumstances immediately prior to the accident due to the severity of her injuries, but an observer of the accident testified at trial that she was traveling slowly, did not apply her brakes, use her turn signal, change her speed, or slow her vehicle in any manner.

Country Club had placed a solid white stop-line and two large unlit brick pillars on its property near the intersection. No other warning existed. Directly opposite Country Club's roadway, on the other side of Route 52, the Methodist Country Home had placed lighted pillars at its entrance. At the time of the accident two overhead street lights, maintained by the State Highway Department, illuminated the intersection. A third street light in the general vicinity was not lit at the time.

Mrs. Cowee and her husband, Brian Cowee, filed suit against Country Club claiming it was negligent for failing to warn Mrs. Cowee of the allegedly dangerous intersection. The Cowees claimed that Country Club breached the duty of care it owed to Mrs. Cowee as a business invitee because she could not have reasonably ascertained the location of Route 52 or the specific location of the intersection since Country Club had failed to adequately mark or light the exit.

On January 16, 1998, the jury found that Country Club was negligent and that its negligence was the proximate cause of Mrs. Cowee's injuries.[1] The jury also found that Mrs. Cowee was negligent in failing to stop prior to entering Route 52 but that her negligence was not a proximate cause of her injuries.[2] The jury awarded Mrs. Cowee $2.39 million and awarded her husband $115,000 for loss of consortium.[3]

Prior to trial, Country Club had filed a motion for summary judgment, arguing that it did not owe any legal duty to Cowee to warn her of the intersection. The Superior Court denied the motion. The Superior Court also denied a motion of Mrs. Cowee that the jury be instructed that she should be presumed to have acted with due care.

After the January 1998 verdict, Country Club filed a Motion for Judgment Notwithstanding the Verdict and an Alternative Motion for New Trial. The Superior Court denied the Judgment Notwithstanding the Verdict, but granted a new trial

1. *Cowee v. Wilmington Country Club*, Del.Super., C.A. No. 95C–10–216, 1998 WL 556030 (March 24, 1998), Letter Op. at 3.

2. *Id.*

3. *Id.*

solely on the issue of Mrs. Cowee's contributory negligence. The trial court held that the jury's finding of contributory negligence without proximate cause was 'against the great weight of the evidence'[4]. The trial court, however, held that the issue of damages and the issue of Country Club's negligence would not be revisited during the second trial.[5] The second trial therefore was to consider only the issue of whether Mrs. Cowee's negligence was greater than the negligence of the Country Club.[6] In the second trial, the jury on December 16, 1998, returned the verdict that Mrs. Cowee had not been contributorily negligent in a manner proximately causing the accident.

Country Club again filed a Motion for Judgment After Trial and an Alternative Motion for New Trial that was denied by the Superior Court on January 15, 1999. On December 29, 1998, the Cowees filed a motion for post-judgment interest seeking an award dating back to the initial jury award on January 16, 1998. The Superior Court denied that the award of post-judgment interest should relate back to the first verdict. Country Club appealed and the Cowees cross-appealed.

## II. The Claims

Country Club claims that Delaware law does not require that an owner of real property warn a business invitee of the existence of an adjacent 'open and obvious' danger and that the Superior Court erred by not granting pretrial summary judgment to it on that issue. Country Club also asserts that the Superior Court erred in not holding Mrs. Cowee negligent as a matter of law for failing to stop or yield prior to entering Route 52. Next, Country Club contends that the Superior Court erred as a matter of law in admitting testimony by other drivers in the vicinity on the night of the accident. Additionally, Country Club claims that the Superior Court's refusal to allow it to adduce evidence of the lack of prior accidents at the intersection constituted error as a matter of law. Lastly, Country Club alleges that the Superior Court abused its discretion by allowing Mrs. Cowee to introduce any evidence of Country Club's negligence during the second trial. We find that all of the Country Club's claims are either moot or are without merit.

In their cross-appeal, the Cowees first claim that the Superior Court incorrectly denied their claim for summary judgment on the issue of contributory negligence and additionally erred in not providing a jury instruction on due care. The Cowees also argue that the Superior Court abused its discretion in granting a second trial solely on the issue of contributory negligence because the initial jury verdict was supported by the great weight of the evidence and should not have been disturbed. The Cowees further allege that the Superior Court erred in setting the date for accrual of post-judgment interest as the date of the second jury verdict on December 16, 1998, instead of the initial jury verdict on January 16, 1998.

We agree that the Superior Court erred in granting a second trial and therefore interest should accrue from the date of the first trial verdict. Because we hold that the Superior Court erred in granting a new trial we need not consider any of the rulings in the second trial.

## III. Standard and Scope of Review

In an appeal from a jury trial, we review conclusions of law *de novo*. The jury's factual findings will be accepted "[i]f they are sufficiently supported by the rec-

4. *Wilmington Country Club v. Cowee,* Del.Super., C.A. No. 95C–10–216 SCD (March 24, 1998) (ORDER).

5. *Wilmington Country Club v. Cowee,* Del.Super., C.A. No. 95C–10–216 SCD (March 24, 1998) (ORDER) at 5–6.

6. *Wilmington Country Club v. Cowee,* Del.Super., C.A. No. 95C–10–216 SCD (March 24, 1998) (ORDER) at 5. *See* 10 *Del. C.* § 8132.

ord and are the product of an orderly and logical deductive process." [7] This Court applies an abuse of discretion standard of review as to the trial court's granting or denial of a new trial [8] and evidentiary rulings. [9]

## IV. Country Club's Claim as to its Duty of Care

 The Superior Court correctly denied Country Club's pretrial Motion for Summary Judgment and its Motion for a Directed Verdict in which Country Club claimed that it did not owe a duty to protect Mrs. Cowee from open and obvious dangers adjacent to its property. [10] Country Club claims, that as a matter of law, it did not have any duty to warn Mrs. Cowee of an open and obvious danger not on its property because it is assumed that a reasonable person would have discovered the dangerous condition or realized the danger.

 Country Club is incorrect because Delaware law provides that a property owner owes a business invitee a duty to provide safe ingress and egress [11], including the duty to warn or protect against hazards on adjacent property [12]. The Superior Court therefore correctly determined that a reasonable issue of material fact existed as to whether Route 52 constituted an 'open and obvious' danger to Mrs. Cowee and therefore was a disputed fact to be resolved by the jury. [13]

 Country Club's claim that 21 *Del. C.* § 4111, did not require an affirmative duty on it to erect or maintain traffic-control devices on its private property and consequently it cannot be held liable to Mrs. Cowee is incorrect. 21 *Del. C.* § 4111 provides in relevant part:

(a) No person shall place, maintain or display upon or in view of any highway any unauthorized sign, signal, marking or device which purports to be or is an imitation of or resembles an official traffic-control device or railroad sign or signal, or which attempts to direct the movement of traffic or which hides from view or interferes with the effectiveness of any official traffic-control device or any railroad sign or signal; (b) No person shall place or maintain nor shall any public authority permit upon any highway any traffic sign or signal thereon any commercial advertising, and no person shall attach to any traffic sign or signal any other sign containing commercial advertising; (c) This section shall not be deemed to prohibit the erection upon private property adjacent to highways of signs giving useful di-

7. Del. Const. Art. IV § II(1)(a); *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972).

8. *Barriocanal v. Gibbs,* Del.Supr., 697 A.2d 1169, 1171 (1997) (providing that an appeal from a trial court's denial of a motion for a new trial is governed by an abuse of discretion standard of review. Where, as here, the appeal, is grounded on allegations that the trial court erred as a matter of law or abused its discretion in certain evidentiary rulings, this Court will first consider whether the specific rulings at issue were correct).

9. *Lilly v. State,* Del.Supr., 649 A.2d 1055, 1059 (1994) (holding that the trial court's evidentiary rulings are reviewed for abuse of discretion).

10. *Wilmington Country Club v. Cowee,* Del.Super., C.A. No. 95C–10–216–SCD (Aug. 5, 1998) (ORDER); *Wilmington Country Club v. Cowee,* Del.Super., C.A. No. 95C–10–216–SCD (March 24, 1998) (ORDER).

11. *Coleman v. National Railroad,* Del.Supr., C.A. No. 89C–MY–2, Babiarz, J., 1991 WL 113332 (June 18, 1991) (Mem.Op.) (holding that Delaware imposed a duty on property-owner defendants to provide invitee plaintiffs injured on adjacent property a duty to provide safe ingress and egress).

12. *Niblett v. Pennsylvania Railroad,* Del.Supr., 158 A.2d 580 (1960) (holding a property owner liable for injuries sustained on adjacent land).

13. *Playtex FP, Inc. v. Columbia Casualty Co.,* Del.Supr., 622 A.2d 1074, 1076 (1992) (holding that a grant of summary judgment cannot be sustained unless there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law).

rectional information and of a type that cannot be mistaken for official signs, in compliance with § 1108 of Title 17.

This statute on its face does not provide that a private landowner has no legal duty to place traffic-control devices on its property. The clear meaning of its text is that traffic-control devices may be placed on private property if the signs are intended to provide useful directional information.[14]

■ Nor did 21 Del. C. § 503 preclude Country Club from erecting a traffic-control device on its property. It provides in relevant part:

Nothing in this Section shall be construed to prohibit the erection and maintenance of signs and signals by the private owners of the real property, so long as such signs and signals are for the safety and convenience of the public and are approved by the Department of Highways and Transportation.

Clearly, this statute does not prevent a private property owner from erecting traffic-control devices on its property. Whether a traffic-control device needs to be placed on private property to be useful or to provide safety features is a question of fact dependant upon the private property's unique physical characteristics. Consequently, whether Country Club should have erected a traffic-control device at the end of its private roadway at its intersection with Route 52 is a fact-specific question for the jury. The Superior Court

therefore correctly refused to grant Country Club summary judgment on the issue of the safety and usefulness of such a sign.[15]

## V. Country Club's Motion for a New Trial

■ The first trial was concluded on January 16, 1998, when the jury returned a verdict for the Cowees. The jury's verdict found Country Club negligent, that its negligence was a proximate cause of the accident and injuries, that Mrs. Cowee's negligence was not a proximate cause of her injuries and that damages should be awarded to her. Country Club filed a motion for judgment as a matter of law or, alternatively, a new trial, arguing that the jury incorrectly found it was negligent and that its negligence was the proximate cause of the accident. In its March 24, 1998 Order, the Superior Court partially granted Country Club's motion for a new trial, holding that a new trial must be held solely on the issue of her contributory negligence.[16]

The Superior Court adequately set forth in its March 24, 1998, Order the factors and rationale it used in its denial of Country Club's motion for a new trial on the issue of its negligence and proximate cause.[17] This Court is bound by the jury verdict finding negligence and apportioning proximate cause against Country Club, if it is supported by the evidence.[18] Coun-

14. *In Re Adoption of Swanson*, Del.Supr., 623 A.2d 1095, 1096–97 (1993) (holding that in seeking to ascertain legislative intent, the Delaware courts utilize the plain meaning rule).

15. *Cross v. Hair*, Del.Supr., 258 A.2d 277, 278 (1969) (holding that although the record was silent as to the Superior Court's reason for denying the defendant's motion for summary judgment, it needed no more reason than to conclude, upon preliminary examination of the facts, that it found desirable to inquire thoroughly into all the facts in order to clarify the application of law).

16. *Cowee v. Wilmington Country Club*, Del.Super., C.A. No. 95C–10–216, 1998 WL 556030 (March 24, 1998) Letter Op. at 5–6. We

review the denial of a Motion for New Trial under an abuse of discretion standard. *Eustice v. Rupert*, Del.Supr., 460 A.2d 507, 510 (1983) (holding that the standard of review of the trial court's denial of plaintiff's motion for a new trial is even more stringent since the granting of a new trial is in the discretion of the trial judge...our standard of review is abuse of discretion).

17. *Cowee v. Wilmington Country Club*, Del.Super., C.A. No. 95C–10–216, 1998 WL 556030 (March 24, 1998) (Letter Op.).

18. Del. Const. Art. IV § 11(1)(a); *Wilmington Trust Co. v. Aetna Casualty and Surety Co.*, Del.Supr., 690 A.2d 914, 917 (1996) (holding that when the motion for a new trial solely on

try Club argues that the evidence did not support the jury's finding of its negligence because Mrs. Cowee failed to stop prior to entering the intersection of Route 52, thereby being negligent as a matter of law. The jury, however, could have found from all the evidence that the exit of the country club's private driveway was difficult to ascertain and that the facts did not support a finding of negligence against Mrs. Cowee especially in viewing the testimony of other individuals who also failed to locate the exit's location prior to entering Route 52. The Superior Court therefore correctly denied Country Club's Motion for a New Trial on the issue of its negligence and proximate cause.

## VI. Mrs. Cowee's Negligence as a Matter of Law

 Country Club also appeals the pretrial order of December 30, 1997, in which the trial court held that Mrs. Cowee was not negligent *per se* for entering Route 52 without stopping. Country Club argues that Mrs. Cowee violated 21 *Del. C.* §§ 4133 and 4165 because she failed to stop at the exit of the country club's private roadway, and that this failure constituted the proximate cause of the accident.[19]

It is not disputed that Mrs. Cowee failed to stop upon leaving Country Club's private roadway prior to entering Route 52. The issue is whether the trial court correctly held that significant evidence existed to permit the jury to find that Mrs. Cowee likely did not know she was about to exit Country Club's private roadway and enter Route 52.

21 *Del. C.* § 4133 provides in relevant part:

> The driver of a vehicle about to enter or cross a roadway from any place other

than another roadway shall yield the right of way to all vehicles approaching on the roadway to be entered or crossed.

21 *Del. C.* § 4165 provides in relevant part:

> The driver of a vehicle emerging from an alley, driveway, private road or building where there is no official traffic-control device shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway, driveway or private road and shall yield the right-of-way to any pedestrian as may be necessary to avoid collision, and before entering the roadway shall yield the right-of-way to all vehicles approaching on the roadway.

Country Club argues, therefore, that Cowee was negligent as a matter of law in entering Route 52 because it is not disputed that she did not stop before she entered the highway.

 ▪ The Superior Court correctly declined to hold Cowee negligent *per se* as a matter of law because it followed the Delaware common law rule that before a traffic statute requiring a driver to yield to other vehicles can be enforced, it must be established that the motorist is aware or as a reasonable person should be aware, that the situation in which she is in requires compliance with the statute. In *Green v. Millsboro Fire Company*,[20] we held that in a collision between a plaintiff driver and a defendant emergency vehicle, before the plaintiff could be found guilty of violating the right-of-way emergency vehicle statute, 21 *Del. C.* § 4134, for purposes of a finding of negligence *per se*, it must first be established that the plaintiff was aware or should have been aware of the emergency vehicle. The Superior Court in its December 30, 1997, Order correctly held:

the weight of the evidence grounds is denied in a jury case, this Court on appeal is bound by the jury verdict if it is supported by the evidence).

**19.** ("The Superior Court's ruling that Mrs. Cowee was not negligent for entering Route

52 without stopping presents a question of law which is reviewed *de novo.*"). *See Fiduciary Trust Co. v. Fiduciary Trust Co.,* Del. Supr., 445 A.2d 927, 930 (1982)

**20.** Del.Supr., 403 A.2d 286 (1979).

Cowee was not negligent *per se* as a matter of law because "if there are no reasonable circumstances from which an ordinary, prudent driver could conclude that the intersection was located anywhere other than where it actually was, then the driver may be found negligent *per se* for failing to yield the right-of-way to˙ oncoming traffic under §§ 4133 and 4165. If, under the circumstances at the time of the accident, an ordinary, prudent driver might reasonably be unable to ascertain the actual location of the intersection or that the driver was approaching an intersection, then a driver's contributory negligence for failure to stop and yield the right-of-way becomes a question of fact for the jury to determine. The Court finds that a question of fact exists as to whether, under the conditions as they existed on the night of November 13, 1997, Cowee could have reasonably ascertained where the intersection was located." [21]

Country Club attempts to distinguish *Green* from the present case in that *Green* involved a moving vehicle, which led to the great difficulty the plaintiff had in seeing the emergency vehicle, whereas here, Route 52 could not be considered a hidden danger due to its static location and size. We are unpersuaded. The Superior Court correctly found that a reasonable person could have difficulty in ascertaining the exact location of Country Club's private roadway exit due to a lack of visibility or misleading location devices, and because there was no traffic-control device that would put a motorist on notice of the Route 52 intersection.

## VII. Jury Instructions

■■■■■ Country Club also appeals the Superior Court's instructions to the jury in both trials as to the issue of Mrs. Cowee's duty of care.[22]

■■■ The Superior Court based its jury instructions on a driver's statutory duty to maintain a proper lookout prior to entering a roadway [23] and for failing to stop a vehicle after emerging from a private roadway [24], relying on *Green.*[25] As previously discussed, *Green* holds that Delaware law provides that before a violation of a motor vehicle statute can be established, it must be demonstrated that the driver was aware or reasonably should have been aware of the situation requiring compliance with the statute.[26] The Superior Court therefore correctly instructed the jury as to the factual issue of whether Cowee was aware or reasonably should have been aware of the existence of the intersection with Route 52.[27]

## VIII. "Lack of Prior Accidents" Evidence

■■■ Country Club attempted to introduce evidence through two witnesses es-

21. *Cowee v. Wilmington Country Club*, Del.Super., C.A. No. 95C–10–216 (Dec. 30, 1997), ORDER at 3–4.

22. *Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1096 (1991) (stating that in evaluating the propriety of a jury charge, the jury instructions must be viewed as a whole. Although a party is not entitled to a particular jury instruction, a party does have the unqualified right to have the jury instructed with a correct statement of the substance of the law).

23. 21 *Del. C.* § 4133

24. 21 *Del. C.* § 4165

25. *Green v. Millsboro Fire* Company, Del. Supr., 403 A.2d 286 (1979).

26. *Id.* at 288. ("Stating that whether or not Plaintiff driver saw, or should have seen, or heard, or should have heard, the fire engine *in sufficient time to have avoided the collision* is under all the circumstances here a jury issue.").

27. *Toll Bros., Inc. v. Considine*, Del.Supr., 706 A.2d 493, 498 (1998) (holding that in applying a negligence *per se* standard, the fact finder need determine only whether the defendant committed the act and if such conduct caused the plaintiff's damages. The jury is precluded from finding that the defendant may escape liability even though he acted reasonably under the circumstances).

tablishing a lack of prior accidents at the intersection. Country Club urged that the lack of prior accidents established that the exit of its private roadway did not constitute a hazardous condition nor did individuals have difficulty in locating it during different types of climatological conditions. Mr. Truet from the Delaware State Highway Department would have testified that accident counts and traffic surveys indicated that the intersection could not be considered dangerous because neither the counts nor surveys indicated any accidents. Country Club's Assistant Manager, Carol Speakman, would have testified that from June 1, 1993, until November 2, 1993 at least 7,814 first-time visitors came to the country club and that no accidents occurred at the intersection during this time.

■■■ The trial court refused to allow the testimony[28] and held that the witnesses failed to meet the foundational prerequisite for the admission of evidence as to the absence of prior accidents or injuries as set forth in *Pippin v. Ranch House South,* Del.Supr., 366 A.2d 1180 (1976).[29] *Pippin* holds that:

[A] party who wishes to offer evidence as to the absence of other accidents must show that, during the period in question, the physical circumstances prior to the accident were reasonably comparable to those in issue. Additionally, it must be shown that the person offering the testimony is one who would, in the ordinary course of events, have either personal knowledge of the condition or that he is the person to whom reports as to accidents would ordinarily be made.[30]

The trial court in the first trial held that the proffered testimony was not admissi-

ble because it did not relate to the night of Cowee's accident, but only to a general period of time prior to the accident. Additionally, the proffered testimony only related to a general perception of the relationship between the Country Club's driveway and the intersection. Evidence was not provided that established specific familiarity by the witness with the intersection on the night of the accident, or another substantially similar time. The intersection's configuration was a paramount consideration in determining the relevance of the proffered testimony. The trial court correctly held that the *Pippin* test was not met because Country Club did not proffer the testimony of any first-time visitors to the club on the same night as Mrs. Cowee's visit. For the *Pippin* foundation requirement to have been met, there must have been a proffer of similar physical circumstances. The Superior Court properly noted:

"The defendant was permitted the opportunity to show that there was evidence of others in substantially similar circumstances, i.e., newcomers to the club who left in a reasonable time proximity to the plaintiff-and would have encountered the same atmospheric and lighting conditions-who were able to recognize that Route 52 was the boundary to the Club and stop safely. No such proffer was ever made, no such individuals were ever identified. There is no merit to this argument."[31]

## IX. Grant of a Second Trial on the Issue of Contributory Negligence.

■■■ The Cowees argue, on Cross–Appeal, that the Superior Court abused its

---

**28.** *Smith v. State,* Del.Supr., 560 A.2d 1004, 1007 (1989) (holding that this Court reviews the admissibility and the manner of presentation of evidence before the trial court and jury under an abuse of discretion standard).

**29.** *Cowee v. Wilmington Country Club,* Del.Super., C.A. No. 95C 10–216 (Jan. 15, 1999), Letter Op. at 3.

**30.** *Pippin v. Ranch House South,* Del.Supr., 366 A.2d 1180, 1183 (1976).

**31.** *Cowee v. Wilmington Country Club,* Del.Super., C.A. No. 95C 10–216 (Jan. 15, 1999), Letter Op. at 3.

discretion in granting the second trial.[32] We agree.

After the jury in the first trial found that Country Club was negligent and that its negligence was the proximate cause of Mrs. Cowee's injuries, the Superior Court granted a new trial limited to the issue of contributory negligence of Mrs. Cowee. In the first trial, the jury found Mrs. Cowee negligent in her failure to stop prior to entering Route 52 but in a response to a Jury Instruction Form found that her negligence was not a proximate cause of her injuries.[33] The Superior Court granted a new trial as to this issue because it held that there was an "inherent contradiction between the finding of the jury on the Jury Instruction Form that Mrs. Cowee was negligent and the finding that her negligence was not a proximate cause of the accident." [34]

 We find that the Superior Court was incorrect in determining that a finding of negligence must result in a corollary finding of proximate cause. This Court, in *Duphily v. Delaware Electric Cooperative*,[35] held that a finding of negligence does not, *ipso facto*, translate to or include a finding of proximate cause, and that such an *ipso facto* rule would improperly transform a finding of negligence to

one of absolute liability. Consequently, we follow a traditional "but for" definition of proximate cause. Proximate cause exists if a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred.[36] A jury verdict will be upheld unless the verdict is contrary to law or against the great weight of the evidence.[37] The Superior Court therefore erred in granting a second trial.

## X. Accrual of Post–Judgment Interest

 The Cowees Cross–Appeal the Superior Court's January 15, 1999 Order that did not compute the Post–Judgment Interest back to the first jury verdict on January 16, 1998.[38]

 Delaware law provides that Post–Judgment Interest is a right belonging to the prevailing plaintiff and is not dependant upon the trial court's discretion.[39] Interest on a judgment begins to accrue when the judgment is entered as final and determinative of a party's rights.[40] Because the Superior Court erroneously granted a new trial on the issue of contributory negligence, the initial January 16, 1998, jury verdict should have been the final, determinative ruling. The

**32.** *Cowee v. Wilmington Country Club*, Del.Super., C.A. No. 95C–10–216, 1998 WL 556030 (March 24, 1998) (Letter Op.).

**33.** *Id.*

**34.** *Id.* at 3.

**35.** *Duphily v. Delaware Electric Cooperative*, Del.Supr., 662 A.2d 821, 828 (1995) (holding that a finding of negligence does not, *ipso facto*, translate to or include a finding of proximate cause).

**36.** *Id.* at 829.

**37.** Del. Const. Art. IV § 11(1)(a); *Storey v. Camper*, Del.Supr., 401 A.2d 458 (1979) (holding that barring exceptional circumstances, a trial judge should not set aside a jury verdict on evidence grounds unless, on a review of all the evidence, the evidence weighs so heavily against the jury verdict that a reasonable jury could not have reached that result).

**38.** *Cowee v. Wilmington Country Club*, Del.Super., C.A. No. 95C–10–216 (Jan. 15, 1999) (ORDER).

**39.** *Moskowitz v. Mayor & Council of Wilmington*, Del.Supr., 391 A.2d 209 (1978) (holding that interest is awarded in Delaware as a matter of right and not of judicial discretion. . . as a general rule, interest accumulates from the date payment was due the plaintiff, because full compensation requires an allowance for the detention of the compensation awarded and interest is used as a basis for measuring that allowance).

**40.** *Moffitt v. Carroll*, Del.Supr., 640 A.2d 169, 178 (1994) (holding that the legal right to post-judgment interest is attached on entry of judgment, not on later date when amount of judgment was modified).

Cowees are therefore entitled to Post–Judgment Interest relating back to the January 16, 1998, jury verdict.

## XI. Dismissal of Other Claims and Cross–Claims, Conclusion

We do not consider either Country Club's or the Cowee's claims and cross-claims on appeal relating to the second trial. Our holding that the Superior Court incorrectly granted a new trial and our affirmation of the January 16, 1998, jury verdict precludes the necessity for any review of issues related to the second trial.

**NOW, THEREFORE, IT IS ORDERED** that the Judgment of the Superior Court be, and the same is **AFFIRMED IN PART; REVERSED IN PART;** and **REMANDED.** Jurisdiction is not retained.