VICE CHANCELLOR

**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: May 5, 2014
Date Decided: June 12, 2014

Michael A. Weidinger
Kevin M. Capuzzi
Pinckney, Weidinger, Urban & Joyce LLC
1220 N. Market Street, Suite 950
Wilmington, DE 19801

John L. Reed
Scott B. Czerwonka
DLA Piper LLP (US)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801

Re:   *Sequoia Presidential Yacht Group LLC v. FE Partners, LLC*,
        Civil Action No. 8270-VCG

Dear Counsel:

This case involves litigation over a loan agreement that was secured by the historic Sequoia presidential yacht. That agreement has been the subject of extensive proceedings, and the underlying facts have elsewhere been described.[1] The parties have now entered into a settlement agreement under which the Plaintiff, Sequoia Presidential Yacht Group LLC, has voluntarily dismissed its claims against Defendant FE Partners, LLC, and agreed to a default judgment on the Defendant's counterclaims alleging breach of the loan agreement. The loan agreement supplies an interest rate of 8.75%.[2] The parties agree that the contract rate governs interest on the loan prior to entry of a judgment, but dispute whether

---

[1] *See, e.g.*, *Sequoia Presidential Yacht Grp. LLC v. FE Partners, LLC*, 2013 WL 3724946 (Del. Ch. July 15, 2013).

[2] Def.'s Submission Regarding Post-Judgment Interest at 2.

the contract rate, or the lower statutory interest rate under 6 *Del. C.* § 2301(a), governs post-judgment interest. I assume for purposes of this Letter Opinion, as did the parties in briefing this matter, that the loan agreement in question is subject to Delaware law and governed by Section 2301 of Title 6 of the Delaware Code.

Chapter 23 of Title 6 of the Delaware Code contains Delaware's usury law.[3] Specifically, Section 2301(c) governs the rate of interest that may be charged by unlicensed lenders[4] of a sum greater than $100,000 not secured by a mortgage, while Section 2301(a) provides the rate of interest that may be charged by unlicensed lenders for loans falling outside of subsection (c).

As stated since 2012, Section 2301 provides, in part:

(a) Any lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon. Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time. Except as otherwise provided in this Code, any judgment entered on agreements governed by this subsection, whether the contract rate is expressed or not, shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve discount rate including any surcharge thereon or the contract rate, whichever is less.

---

[3] *See* 6 *Del. C.* § 2304(a) ("Usury is the charge to a borrower by a lender, directly or indirectly, of a higher rate of interest than that permitted by law.").

[4] *See* 5 *Del. C.* § 2202(a) ("Every person desiring to transact the business of lending money in this State shall be required to obtain a license . . . provided, however, that a person that makes not more than 5 loans within any 12-month period shall be deemed not to be transacting the business of lending money. Except as otherwise provided by law, loans made by any such unlicensed lender shall fall under Chapter 23 of Title 6.").

> . . .
>
> (c) Notwithstanding any other provision in this chapter to the contrary, there shall be no limitation on the rate of interest which may be legally charged for the loan or use of money, where the amount of money loaned or used exceeds $100,000, and where repayment thereof is not secured by a mortgage against the principal residence of any borrower.[5]

At first blush, as the Plaintiff argues, subsection (a) of the 2012 statutory revision appears to reflect a legislative intent to limit post-judgment interest to the lower of the legal rate of interest or the contract rate. However, the Section operates such that, for any loan under subsection (a) providing contractually for a particular interest rate, the interest rate post-judgment *shall be* the contract rate, so long as that rate is lawful (that is, 5% over the Federal Reserve discount rate or less). In other words, where the parties have agreed to a (non-usurious) interest rate in a loan agreement, under subsection (a), post-judgment interest continues to accrue at this agreed-upon rate.

In fact, the current version of the statute is identical in its effect to the April 18, 1980 version, which provided (in language perhaps clearer than the current statute):

> (a) The legal rate of interest on a judgment shall be at any rate expressed in the contract sued upon, or where there is no expressed contract rate, a 5% over the Federal Reserve discount rate including any surcharge, on the date of judgment, charged by the Federal Reserve Bank in the district encompassing the State of Delaware. Any lender may charge and collect from a borrower interest at any

---

[5] 6 *Del. C.* § 2301.

3

rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon.[6]

The April 1980 version of the statute was amended in May 1980; that version of subsection (a) provided the same maximum interest rate (5% over the Federal Reserve discount rate), and for post-judgment interest "at the rate in the contract sued upon."[7] The synopsis of the current version of the statute—the 2012 revision—explains that the purpose of the amendment is to clarify that in "personal loans" governed by subsection (a), post-judgment interest shall accrue at the "lesser of the legal interest rate or the contract rate"—in other words, at the non-usurious interest rate provided for in the applicable loan agreement. The lawful rate of interest specified in a loan agreement governed by subsection (a) will *always* be less than or equal to the legal rate.

The loan agreement at issue here falls not under subsection (a), but under subsection (c), which states that "there shall be no limitation on the rate of interest which may be legally charged for the loan or use of money, where the amount of money loaned or used exceeds $100,000 . . . ."[8] That subsection does not address the rate at which post-judgment interest accrues, but speaks only to the rate of interest that may be legally charged. Notwithstanding the subsection's silence on post-judgment interest, as noted above it is clear from the statutory scheme under

---

[6] 6 *Del. C.* § 2301(a) (Apr. 18, 1980).
[7] 6 *Del. C.* § 2301(a) (May 13, 1980).
[8] 6 *Del. C.* § 2301(c).

subsection (a) that the legislature intended, in circumstances where a lawful contract rate is specified, for the contract rate to set the post-judgment interest rate. The only limitation on post-judgment interest in subsection (a) is that the rate agreed upon must be no more than the "legal" rate; that restriction is explicitly absent from loans under subsection (c). Consistent with the legislative rationale expressed in subsection (a), the post-judgment interest rate should be that to which the parties lawfully agreed—here, 8.75%.[9]

It is unclear to what extent I may exercise my discretion to depart from a post-judgment interest rate consistent with Section 2301,[10] but in any event, I find

---

[9] Where the interest rate agreed to lawfully exceeds the "legal" rate, there are policy reasons for allowing post-judgment interest at the contract rate, as well as for limiting it to the legal rate. As to the former, as the Defendant points out, the parties have negotiated an interest rate consistent with the risks involved, and to allow the borrower to receive a lower rate on default incurs moral hazard. On the other hand, the risks inherent in the loan are transmuted upon judgment to the difficulties of collecting that judgment, in which endeavor the lender will be aided by the mechanism of the state, and the legislature could conclude that such a consideration warrants a lower interest rate post-judgment than that agreed to in the loan agreement. Having found that the legislative intent is consistent with applying, post-judgment, the agreed rate of interest, I have not addressed the policy considerations raised by the parties in reaching my decision here.

[10] *See Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 409 (Del. 1988) ("While the legal rate of interest has historically been the benchmark for *pre-judgment interest*, a court of equity has broad discretion, subject to principles of fairness, in fixing the rate to be applied.") (citations omitted) (emphasis added); *Brandin v. Gottlieb*, 2000 WL 1005954, at *29 (Del. Ch. July 13, 2000) ("In the Court of Chancery the legal rate is a mere guide, not the inflexible rule.") (internal quotation marks omitted); *Kirkpatrick v. Caines Landing Wildlife Pres. Ass'n*, 1992 WL 383382, at *1 (Del. Ch. Dec. 15, 1992) (explaining that, in its discretion, the Court may segment pre- and post-judgment interest rates); *but see Wilmington Country Club v. Cowee*, 747 A.2d 1087, 1097 (Del. 2000) ("Delaware law provides that Post-Judgment Interest is a right belonging to the prevailing plaintiff and is not dependent upon the trial court's discretion.").

5

no equitable reason to depart from it here. Accordingly, I find that both pre- and post-judgment interest shall accrue at the agreed-upon contract rate of 8.75%.[11]

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[11] Because I have determined that the contract rate provides the applicable post-judgment interest rate, I need not address the Defendant's contention that the Plaintiff waived its right to argue that the lower statutory legal rate governs post-judgment interest. Further, I reject the Plaintiff's contention that the Defendant waived its right to argue that the contract rate governs post-judgment interest.