IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

DOROTHY M. RUSSUM,                  :
                                    :        C.A. No: K13C-03-022 RBY
              Plaintiff,            :
                                    :
  _____                       :
       v.                           :
                                    :
IPM DEVELOPMENT PARTNERSHIP         :
LLC, a Delaware limited liability company, :
BIG LOTS STORES, INC., an unregistered :
entity, and SILICATO COMMERCIAL    :
REALTY, INC., a Delaware corporation, :
                                    :
              Defendants.           :

Submitted: May 1, 2015
Decided: May 21, 2015

***Upon Consideration of Defendant Big Lots Stores, Inc's.
Motion for Summary Judgment***
**GRANTED**

**ORDER**

William D. Fletcher, Jr.,Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware for Plaintiff.

Christopher T. Logullo, Esquire, Chrissinger & Baumberger, Wilmington, Delaware for Defendants IPM Development Partnership, LLC and Silicato Commercial Realty, Inc.

David J. Soldo, Esquire, Morris James, LLP, Wilmington, Delaware for Defendant Big Lots Stores, Inc.

Young, J.

## SUMMARY

Dorothy M. Russum ("Plaintiff") alleges to have been injured, following a trip and fall accident sustained on a ramp leading up to Big Lots Stores, Inc.'s ("Defendant Big Lots") store in Dover, Delaware. Defendant Big Lots leased the store premises from IPM Development Partnership, LLC ("Defendant IPM"). The property was managed by Silicato Commercial Realty, Inc. ("Defendant Silicato"). A term in the lease agreement ("Lease") between Defendant Big Lots and Defendant IPM, delineated control of the area containing the ramp, called the "common area," to IPM. Plaintiff's claim is supported by expert testimony opining that the slope of the ramp was defectively designed, creating the dangerous condition leading to her fall.

Pursuant to a section of the *Restatement Second of Torts*, recognized by Delaware case law, Defendant Big Lots argues that, where it did not have knowledge of the defective design, and where it was contractually absolved of control of the ramp area, Plaintiff has failed to show Defendant Big Lots owed her any duty. Therefore, Defendant Big Lots moves for summary judgment on Plaintiff's claim against it, as well as Defendants IPM's and Silicato's cross claim for indemnification. For the reasons that follow, Defendant Big Lots' Motion for Summary Judgment is **GRANTED**.

## FACTS AND PROCEDURES

On April 21, 2011, Plaintiff sustained injuries resulting from a slip and fall accident, while in the "common area" in front of Defendant Big Lots' store in Dover, Delaware. Defendant Big Lots, the lessee, leased building housing the store from the lessor, Defendant IPM. As per the Lease, this "common area" was the sole responsibility of Defendant IPM. Defendant Silicato was the property manager. On

March 18, 2013, Plaintiff filed a Complaint against Defendants Big Lots, IPM and Silicato seeking damages stemming from her injuries. Defendants IPM and Silicato filed cross claims against Defendant Big Lots, with Defendant Big Lots filing cross claims against each of the other Defendants as well.

Plaintiff alleges that, while attempting to enter Defendant Big Lots' retail store, she felt something under her foot, causing her to fall. Directly in front of the store is a sloped ramp. On June 10, 2014, a site inspection was conducted by Ronald Cohen, a certified engineer retained by Plaintiff. Mr. Cohen rendered a copy of his findings on July 15, 2014, in which he concludes that the sloped ramp in front of Defendants' store caused Russum to fall and injure herself.

## STANDARD OF REVIEW

Summary judgment is granted upon showing that there is no genuine issue of material fact, where the moving party is entitled to judgment as a matter of law.[1] The Court views the evidence in the light most favorable to the non-moving party.[2] The moving party bears the burden of showing that no material issues of fact are present, but once a motion is supported by such a showing, the burden shifts to the non-moving party to demonstrate that there is a genuine dispute as to material issues of fact.[3] In the alternative, where the non-moving party bears the ultimate burden of proof at trial, the moving party succeeds on her motion for summary judgment by

---

[1] Super. Ct. Civ.R. 56(c).

[2] *Windom v. Ungerer*, 903 A.2d 276, 280 (Del. 2006).

[3] *Moore v. Sizemore*, 405 A.2d 679, 680-81 (Del. 1979).

showing a "complete failure of proof concerning an essential element" on the part of the non-movant, thereby "rendering all other facts immaterial."[4]

## **DISCUSSION**[5]

In Delaware, it is generally accepted that a business owner owes business invitees a duty to "protect against both dangers he knows to exist and those which with reasonable care he might discover."[6] In order to succeed in a negligence claim based upon failure to keep a premises safe, a Plaintiff must show both that "there was a dangerous or defective condition in defendant's store, and that the condition was either placed there by the defendant or its employees, or was permitted to remain after notice of its existence had come or should have come to the attention of defendant..."[7] Defendant Big Lots' present motion for summary judgment asks this Court to find that in certain, *limited* types of situations, such a duty does not exist for all business owners involved.

Defendant Big Lots' motion addresses the instance where Plaintiff's injury occurred in an area, whose maintenance and repair has been previously determined contractually. The locale in question was positioned directly in front of Defendant

---

[4] *Kanoy v. Crothall American, Inc.*, 1988 WL 15367 at *1 (Del. Super. Ct. Feb. 8, 1988) (citing Celotex Corporation v. Catrett, 477 U.S. 317, 91 (1986)).

[5] Defendant IPM and Defendant Silicato joined Plaintiff's Opposition to Defendant Big Lots' Motion for Summary Judgment, by letter dated April 30, 2015. For ease of readability, the Court refers to the positions contained in said Opposition, as those of "Plaintiff."

[6] *Kanoy*, 1988 WL 15367 at *2.

[7] *Id.*

Big Lots' store, containing a ramp leading up to the place of business. Defendant Big Lots was the lessee of said store, and Defendant IPM the lessor. Their relationship was governed by the Lease, which, amongst other things, provided for the upkeep and maintenance of the location adjacent to the store, termed the "common area," to be the sole responsibility of Defendant IPM, the lessor. Significantly, this common area encompassed the involved ramp. Plaintiff claims her accident to have been caused by tripping on said ramp. In support of her allegations, Plaintiff has provided expert testimony formulating the case for a defectively designed ramp. Alleging that the ramp was entirely under the control of Defendant IPM, Defendant Big Lots argues it had no duty to Plaintiff with regard to said ramp and, thus, is deserving of summary adjudication in its favor.

In arguing the merits of their respective positions, Plaintiff and Defendant Big Lots raise two questions: (1) to what extent a lessee owes a duty to plaintiff, where plaintiff injures herself on property whose upkeep is contractually bestowed upon lessor; and (2) what duty does a lessee owe a plaintiff with respect to ingress and egress, concerning property that is adjacent to the property leased? The former question was first considered in Delaware by *Rentz v. Rehoboth Mall Ltd. P'ship,* which, in the circumstances presented by that litigation, found the lessee to have no duty to the plaintiff.[8] As Defendant Big Lots has articulated, the facts of that case are similar to those in the instant matter. As in the case at bar, the *Rentz* Plaintiff brought

---

[8] 1997 WL 716893, at *1 (Del. Super. Ct. Aug. 22, 1997).

a negligence claim founded upon a design defect.[9] Furthermore, the defectively designed structure was also a ramp leading up to lessee's store.[10] The lessor and lessee had, similarly, contractually determined that the area encompassing the ramp, was to be the responsibility of the lessor.[11]

The *Rentz* Court found that this described situation was governed by *Restatement Second of Torts* § 360 (1965), stating in relevant part:

> A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, *is subject to liability* to his lessee and *to others lawfully upon the land* with the consent of the lessee or a sublessee *for physical harm caused by a dangerous condition upon that part of land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.*[12]

Despite finding that, where contracting to retain control over the area containing the ramp, the lessor remained fully liable, the *Rentz* Court recognized that lessees could also be liable in such situations where "[lessee] knew that the ramp was a dangerous condition, but failed to warn [plaintiff] about it." The *Rentz* Court did so, largely due to the language contained in Comment *a* to § 360.[13]

---

[9] *Id.*

[10] *Id*.

[11] *Id*

[12] *Id.*, at *2 (citing *Restatement Second of Torts* § 360 (1965))(emphasis added).

[13] Stating in relevant part"[t]he lessee may, for example, know that the common entrance to the apartment or office, which he has leased has become dangerous for use because of the

However, *Rentz* stopped short of announcing that the rule in Delaware was that all lessees were liable to the extent of their knowledge of a dangerous condition. *Rentz* merely "assum[ed that]...subject[ing] a tenant to liability for failure to warn of known defects is also the law in Delaware..."[14] Nevertheless, even given this assumption, *Rentz* held that "[plaintiff] has failed to produce any evidence that [defendant-lessee] *knew* about the cart ramp's allegedly dangerous condition."[15] This was primarily because the claim was based upon a design defect in the ramp, which was solely supported by "the report of an architect" and "[defendant-lessee] had no role in the design or construction of the ramp for which [defendant-lessor] is responsible."[16] The Court, therefore, granted the defendant-lessee's motion for summary judgment.[17]

Pursuant to the analysis in *Rentz*, this Court is persuaded that Defendant Big Lots, as a defendant-lessee who had no part in constructing or designing the ramp in question, could not have had knowledge of its defective condition. Indeed, as in *Rentz*, the opinion of an expert is required to make the determination as to a dangerously sloped construction. Even if, as the *Rentz* Court assumed,

---

lessor's failure to maintain it in safe condition. [Lessee's] knowledge may subject him to liability even to his own licensees, *if he fails to warn them of the danger*" *Rentz*, 1997 WL 716893 at *2 (emphasis added).

[14] *Rentz*, 1997 WL 716893 at *3.

[15] *Id.* (emphasis added).

[16] *Id.*

[17] *Id.*

Comment *a* is the law in Delaware, it would be a challenge to deem Defendant Big Lots liable for defects in an area contractually under the control of Defendant IPM, the lessor. Without the requisite knowledge, Defendant Big Lots could not warn Plaintiff of any alleged defect.

Yet, Plaintiff asserts that Delaware requires landlords to provide safe ingress and egress to invitees, including adjacent property.[18] Plaintiff contends that the "common area," even if contractually under the control of Defendant IPM, was an adjacent area forming the ingress and egress to property possessed by Defendant Big Lots, its store. Therefore, Plaintiff argues Defendant Big Lots had a duty to provide safe ingress and egress to its invitees. Although not cited to by either party, the intersection between the holding in *Rentz*, and the proposition put forward by Plaintiff concerning ingress and egress, has been considered by the Delaware Superior Court in *Kendzierski v. Delaware Fed. Credit Union*.[19] The Court finds that case instructive.

As a starting point, *Kendzierski* is helpful to Plaintiff's position, because it extends the general Delaware rule that landowners must provide safe ingress and egress to invitees to lessees such as Defendant Big Lots.[20] Nevertheless, *Kendzierski* found that this extension was not applicable in all situations,

---

[18] *See e.g.*, *Wilmington Country Club v. Cowee,* 747 A.2d 1087 (Del. 2000).

[19] 2009 WL 342895, at *1 (Del. Super. Ct. Feb. 4, 2009).

[20] *Id.*, at *5 ("[b]ecause liability in this respect is grounded upon the owner's superior knowledge of the danger to the invitee, the Court considers the duty equally applicable to *lessees* as to property owners") (emphasis added) (internal quotations omitted).

recognizing that the *Rentz* Court "granted summary judgment in favor of the lessee because the plaintiff had presented no evidence that the lessee had knowledge of the alleged defects in the ramp's design and construction."[21] *Kendzierski*, therefore, limited its finding to the "particular facts of the case at bar," where "a landowner has a duty to protect or warn invitees against *latent dangers*."[22]

Considering *Kendzierski's* holding and its discussion of *Rentz*, for this Court the determinative factor regarding liability of the lessee is the precise *type* of latent defect or danger involved. Hence, whether the defendant-lessee knows, or should have known, of its existence is critical. In *Kendzierski*, for example, the latent danger was loose bricks found in the stairs leading up to the entrance of lessee's store.[23] Moreover, there was some evidence that defendant-lessee had taken steps to ameliorate the stairs' precarious condition.[24] Although the *Kendzierski* Court found that, where a contract provided for lessor to repair and maintain the stairs, no claim could be brought against lessee premised on negligent maintenance of the stairs, there was sufficient factual debate as to whether defendant-lessee was on notice of the defect, or should have been on

---

[21] *Kendzierski*, 2009 WL 342895 at *5.

[22] *Id.* (emphasis added).

[23] *Id.*, at *1.

[24] *Id.*, at *6.

notice with reasonable inspection, to deny the motion for summary judgment.[25] If the lessee had known of the defect, *Kendzierski* held the lessee had a duty to warn the plaintiff.[26] However, in so holding, *Kendzierski* acknowledged that in the situation presented by *Rentz*, where the defect needed articulation by an expert, a court could appropriately determine that the lessee did not have knowledge of any defect in the ramp it had no part in designing or constructing.[27]

In reviewing these two authorities, this Court notes the distinction between loose bricks, and an allegedly dangerously sloped ramp. The argument is more salient and palatable that lessee knew, or should have known, of defectively loose bricks than that the lessee knew of the allegedly defective design of a ramp it did not create. Furthermore, as Defendant Big Lots points out, no evidence has been presented that a previous accident on the ramp would have put it on notice of the dangers associated with the ramp's use. Fact discovery has been completed in this case. "On this record, [plaintiff] has failed to show that [defendant-lessee] breached any duty to warn her of known dangers..."[28]

Where the moving party has shown a "complete failure of proof concerning an essential element" by the non-moving party, the moving party is entitled to

---

[25] *Id*., at *1.

[26] *Id.*

[27] *Kendzierski*, 2009 WL 342895 at *4.

[28] *Rentz*, 1997 WL 716893 at *3.

judgment as a matter of law.[29] Following the *Rentz* reasoning, this Court determines that Plaintiff has failed to establish Defendant Big Lots owed her a duty to warn of the alleged defect in the ramp. Therefore, stricken of this essential element, Plaintiff cannot sustain her claim against Defendant Big Lots. The Court **GRANTS** Defendant Big Lots' motion with respect to Plaintiff's claim.

In addition to moving for judgment as a matter of law against Plaintiff's claim, Defendant Big Lots seeks summary adjudication of one of Defendant IPM's and Defendant Silicato's cross claims. By their cross claims, Defendants IPM and Silicato seek contribution and indemnification from Defendant Big Lots. The Court understands Defendant Big Lots' motion to refer to the cross claim for indemnification only.[30] Defendant Big Lots argues that, if this Court finds it is entitled to judgment as a matter of law with respect to Plaintiff's claims, then Defendants IPM's and Silicato's indemnification cross claim should be similarly disposed of. In support of this proposition, Defendant Big Lots cites *Pike Creek Chiropractic Ctr., P.A. v. Robinson*, in which the Delaware Supreme Court held that "the scope of indemnification" is determined by "actual wrongdoing," to a third party bringing suit, and that an "[indeminitee] should not be divested of its legal right to indemnification due to unsubstantiated pleading choices of a third party."[31] The *Rentz* Court further applied this reasoning to grant lessee-

---

[29] *Kanoy*, 1988 WL 15367 at *1.

[30] In Defendant Big Lots' Motion for Summary Judgment it states "Big Lots is also entitled to summary judgment on co-defendants' cross claim for indemnification," at ¶ 9.

[31] 637 A.2d 418, 421 (Del. 1994).

indemnitee's motion for summary judgment against lessor-indemnitor, where it was decided that no wrongdoing was found on lessee-indemnitee's part.[32]

Defendant Big Lots' citation to this authority requires this Court to perform something of a reverse analysis. That is, the positioning of the parties in the case at bar is switched. Rather than seeking summary judgment on its own cross claim of indemnification, Defendant Big Lots, seeks summary adjudication of lessor-indemnitor's cross claim against it. Nonetheless, the Court finds the logic applicable. If the Supreme Court has held that, where lessee-indemnitee is found to have committed no misdeed, it retains its right of indemnification, then it must also be that lack of wrongdoing precludes indemnification claims against said lessee-indemnitee. A further review of the relationship of all the parties, vis-a-vis this action, reveals the cogency of this point. Defendants IPM and Silicato, by their cross claim, seek to indemnify themselves from any monetary liability originating from Plaintiff's lawsuit. Although neither party states as much, the Court understands the right of indemnification to stem from Section 11 of the Lease, which speaks to the lessor's and lessee's right to indemnification.[33] Either party's implication of this section arises upon the injury to "any person" caused by either party's "negligent" or "wilful acts."[34] It follows, therefore, that if one of these parties is adjudicated to have no part in said injury, then the right to

---

[32] 1997 WL 716893 at *3.

[33] *See* Ex. C to Defendant Big Lots' Motion for Summary Judgment.

[34] *Id*.

indemnification falls away. Here, the Court has deemed there to be no evidence that Defendant Big Lots breached its standard of care – hence, no finding of wrongdoing can exist. The Court **GRANTS** Defendant Big Lots' motion for summary judgment with respect to Defendants IPM's and Silicato's cross claim for indemnification.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Big Lots' Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED**.

        /s/ Robert B. Young
               J.

RBY/lmc
oc:    Prothonotary
cc:    Counsel
       Opinion Distribution