# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KELLY J. GONZALEZ, as guardian and )
next friend of the minor, R.G., and R.G. )
individually, )
                    )
           Plaintiffs, )
                    )    C.A. No. N19C-11-001 CEB
         v. )
                    )
CLAYMONT STEAK SHOP, INC., a )
domestic corporation, and )
PHILADELPHIA PIKE PROPERTIES, )
LLC, a limited liability company, )
                    )
           Defendants. )

Submitted: March 22, 2021
Decided: June 8, 2021

*On Defendant Philadelphia Pike Properties, LLC's*
*Motion for Summary Judgement.*
**DENIED.**

## ORDER

This 8th day of June, 2021, the Court makes the following findings in denying

Defendant Philadelphia Pike Properties, LLC's motion for summary judgment:

1.      According to the complaint, the Claymont Steak Shop (the "Steak

Shop") is a business located in, appropriately enough, Claymont. It says further that

the property is "owned, managed and/or maintained" by an entity called Philadelphia

Pike Properties, LLC ("Landlord").[1]  Since this is a premises liability case, these matters will become germane in a moment.

2.    The plaintiff is a minor child who says she was visiting the said Steak Shop with her parents one evening when, while walking from the parking lot to the dimly lit back entrance of the shop, she stepped backwards to allow other customers to exit.[2]  In doing so, "her left foot and ankle twisted as she stepped in a large crack in the pavement causing her to fall."[3]  There is then a claim asserted against the Steak Shop and similarly against the Landlord, all to the effect that plaintiff was a business invitee, the crack in the sidewalk should not have been there, and it was defendant's fault for not making the premises safe for customers.

3.    The Landlord filed an answer and cross-claim against the Steak Shop, asserting that any crack in the pavement occurred on premises controlled by the Steak Shop and the Landlord should be indemnified or, at the least, the Steak Shop is liable for contribution.[4]

4.    The Steak Shop filed an answer and cross-claim against the Landlord claiming, predictably enough, that the injury occurred on premises controlled by the

---

[1] The Plaintiff initially named a different entity as the Landlord but identified Philadelphia Pike Properties, LLC by way of an Amended Complaint which, in all other respects, mirrored the initial Complaint.  *See* Am. Compl. (D.I. 10).

[2] *Id.* ¶ 12.

[3] *Id.*

[4] Def. Philadelphia Pike Properties, LLC's Ans. to Pl.'s Compl. And Cross-cl. Against Claymont Steak Shop, Inc. (D.I. 17).

Landlord and the Steak Shop should be indemnified by the Landlord for any liability found to exist.[5]

5. After some discovery took place, Landlord filed the instant motion for summary judgment, appending the commercial lease between the parties and pointing to certain clauses and arguing that Steak Shop's clear duty was to maintain not only the Steak Shop but also the parking lot. Thus, wherever Plaintiff suffered this injury would have been an area controlled by the Steak Shop and not the Landlord.

6. Equally informed by discovery thus far, the Steak Shop responds by telling us that the girl's injury happened "when her foot became lodged in a large crack in the asphalt of the parking lot immediately adjacent to a concrete slab at the rear entrance" of the Steak Shop. Further, the crack is identified as located "within the parking lot that was shared with M&T Bank." The Steak Shop then urges that the lease provisions governing maintenance are limited to premises actually controlled by the Steak Shop and the parking lot was a common area and subject to the Landlord's control.

7. Although Landlord believes there is support for its position in other lease clauses, only one deals specifically with the maintenance of the parking lot. Paragraph Three "Payments by Tenant" includes a subparagraph (C) that says:

---

[5] Def. Claymont Steak Shop, Inc.'s Ans. to Am. Compl. with Cross-cl. (D.I. 22).

3

> Maintenance Contribution. The Tenant shall pay all operating expenses of the building being rented to it, including operating and maintaining the parking lots, driveways, curbing, grass, *except areas designated for the common use with the occupants of the adjacent building which has the use of the parking lot serving both buildings*.[6]

8. So: is the place in the parking lot where this crack appeared and into which our Plaintiff twisted her ankle part of the Steak Shop's parking lot? Or is it part of the "common use" areas used by the adjacent building which has the use of the parking lot serving both buildings?

9. Needless to say, this is the pivotal question for the parties. Unfortunately, the Court cannot say which is which or what is what on this record. It does not seem disputed that the parking lot was shared with M&T Bank. Whether it is "designated" for common use is not clarified in the record. And whether M&T Bank is the "adjacent building" referenced in the lease is equally unclear. Then there is the fact that this maintenance provision appears in the payment section of the lease and references a maintenance contribution, which is qualitatively different. A duty to contribute to maintenance is different from a duty to maintain.

10. As mentioned, other lease provisions are no clearer. The "Maintenance" clause, Paragraph Nine says only that "The Tenant shall also maintain any driveways and parking areas *designated for its exclusive use*."[7] But

---

[6] Def. Philadelphia Pike Properties, LLC's Mot. For Summary J. Ex. A, ¶ 3(C) (emphasis added).

[7] *Id.* ¶ 9 (emphasis added).

4

the area of the parking lot in question was apparently not designated for the exclusive use of the Steak Shop and the clause is therefore not helpful, except to infer that the Tenant has no duty to maintain a parking lot shared in common with others.

11.     In a summary judgment proceeding, the burden is on the moving party to demonstrate that there is no issue of material fact and that it is entitled to judgment as a matter of law.[8]  But neither party has stated unequivocally where this crack was or whether the crack was on property under the Steak Shop's exclusive control or was in common space and therefore not under the shop's exclusive control.  The Steak Shop has resisted Landlord's motion for summary judgment by arguing that the lease is ambiguous.  The Court does not find the lease ambiguous; rather, the facts are.  If the parties disagree on the facts, or disagree on which party under the lease "controlled" the responsibility for maintenance of this particular crack in the pavement, the Court cannot resolve that question – it is for a jury to determine.

12.     At common law, it is the Landlord's responsibility to make the premises safe for business invitees.[9]  A lease may shift that responsibility to the tenant, but barring a clear expression of an intent to do so, a shift of responsibility cannot be presumed or surmised.[10]  The Landlord here has brought a motion to be relieved of

---

[8] Super. Ct. Civ. R. 56(c).
[9] *See generally Wilmington Country Club v. Cowee*, 747 A.2d 1087, 1092 (Del. 2000); *Craig v. A.A.R. Realty Corp.*, 576 A.2d 688, 696 (Del. Super. 1989).
[10] *See Paul v. Paul's Liquor Store Co.,* 217 A.2d 197 (Del. 1966) ("The general rule is that a lease is construed against a lessor in case of ambiguity."); *see also Grotto*

a common law obligation but cannot point to specific lease language that does so. Indeed, the Landlord cannot demonstrate that there is no issue of material fact. There appears to be a sharp dispute about who controlled the land on which the injury occurred. The Court's ruling thus becomes self-evident; it cannot grant summary judgment to the Landlord.

13. For the foregoing reasons, Defendant's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

Charles, E. Butler, Resident Judge

---

*Pizza, Inc. v. Ocean Bay Mart, Inc.*, 1998 WL 388402, at *7 (Del. Ch. June 30, 1998) ("[A]mbiguities are resolved in favor of the lessee." (quoting 49 Am. Jur. 2d § 510)).